## Eagle Cotton Co. *v.* Blair.[*]

(Division B.   Feb. 18, 1929.)

[120 So. 566.   No. 27567.]

*Corpus Juris-Cyc References: Courts, 15CJ, section 510, p. 1078, n. 26; On conclusiveness of findings of trial court in case triable without a jury, see 2 R. C. L. 202; 1 R. C. L. Supp. 441.

*Baskin, Wilbourn & Miller,* for appellant.

*W. C. Sams* and *H. F. Case,* for appellee.

Argued orally by *C. C. Miller,* for appellant, and *Hal F. Case,* for appellee.

ANDERSON, J. Appellee brought this action in the county court of Lauderdale county under chapter 138 of the Laws of 1912 (Hemingway's Code of 1927, sections 5236 to 5257, inclusive), against appellant, to recover of the latter the sum of two hundred forty-nine dollars and ninety-six cents, which sum was made up by the difference in the guaranteed commercial value, and the alleged actual commercial value of three hundred and thirty-three sacks of cotton seed meal sold and delivered to appellee by appellant, and half of the purchase price of the meal, which the appellee had paid appellant. By agreement of the parties, jury was waived, and the county judge tried the cause, sitting both as judge and jury, and rendered a judgment in favor of appellant. From that judgment appellee appealed to the circuit court of Lauderdale county, where a judgment was entered, reversing the judgment of the county court, and remanding the case to that court, with direction to enter a judgment for appellee, which was accordingly done. From that judgment appellant appealed to the circuit court, where judgment was entered, affirming the last judgment of the county court. From that judgment of the circuit court, appellant prosecutes this appeal.

The action is based on sections 15, 16, and 19 of the Fertilizer Act, being sections 5250, 5252 and 5255 of Hem-

ingway's Code of 1927, which sections follow in the order stated:

"It shall be the duty of the state chemist to analyze free of charge all samples of cotton seed meal and fertilizers sent to him by farmers, provided that such samples be drawn in the presence of two disinterested witnesses who will certify that such samples were taken in accordance with printed directions of the state chemist. But the identity of the brand of fertilizer or the name of the manufacturer may not be revealed and in such cases shall be no bar to having test made. The samples so drawn shall be delivered to the witnesses who will themselves forward it to the state chemist for analysis."

"The official analysis made under the direction of the state chemist, and bearing his seal, shall be admissible as evidence in any reports of this state on the trial of any issue involving the merits of any fertilizer, cotton seed meal or fertilizing material."

"If any sample of fertilizer, fertilizing material, or cotton seed meal drawn in accordance with the provisions of this act, shall, upon analysis, prove deficient in any of its constituents as guaranteed, and, if by reason of such deficiency, the relative commercial value thereof computed by means of the schedule of prices fixed by the state chemist, shall fall four per cent below the commerical value computed from the guaranteed analysis, the manufacturer, dealer, or guarantor, or person responsible for the sale of such fertilizer shall be guilty of violation of this act, and, upon conviction thereof, shall be fined not less than fifty dollars and not more than one hundred dollars for each offense, and any contract, agreement, or note made by any farmer or other purchaser for the payment of such deficient fertilizer or fertilizing material or cotton seed meal shall be collectible for only one-half the amount agreed upon, and, if payment has been made already, the guilty person, firm or seller shall return to the purchaser injured one-half the amount paid. In addi-

tion to the penalty provided in this section, such deficient fertilizer shall be subject to seizure, condemnation and sale as the court may direct, the proceeds from such sale to be covered into the state treasury."

Appellee bought from appellant three hundred and thirty-three sacks of cotton seed meal, for which he paid appellant the sum of four hundred fifty-seven dollars and eighty-eight cents. Appellant guaranteed that the cotton seed meal contained six and fifty-eight hundredths per cent of nitrogen. The state chemist analyzed the cotton seed meal, and testified that it contained six and thirty hundredths per cent of nitrogen, instead of six and fifty-eight hundredths per cent, which made a difference in the relative commercial value of the cotton seed meal of four and twenty-eight hundredths per cent. Dr. Katz, a witness for appellant, testified that he made an analysis of the cotton seed meal, and found that it contained six and sixty hundredths per cent of nitrogen. The state chemist and Dr. Katz were the only witnesses who testified as to the nitrogen content of the cotton seed meal. Section 16 of the act (section 5252, Hemingway's Code of 1927) provides that the official analysis made by the state chemist, bearing his seal, shall be admissible in evidence in any court of this state trying an issue involving the merits of any fertilizer, cotton seed meal, or fertilizer material. In addition to the oral testimony of the state chemist heard on the trial of this cause, the certificate of his official analysis of the cottton seed meal was introduced in evidence. The statute does not provide that such certificate shall be conclusive evidence of the contents of the cotton seed meal, but that it "shall be admissible as evidence," etc. Therefore the certificate under the seal of the state chemist of his official analysis adds nothing to his oral testimony given before the court. Such certificate and oral testimony, taken together, was simply the testimony of one witness.

The county court found as a fact that the analysis of the cotton seed meal by the state chemist had been brought about in the manner provided by the statute, but that appellee had failed to meet the burden of establishing by a preponderance of the evidence that the nitrogen content of the meal was as much as four per cent below its commercial value, computed from the guaranteed analysis. The county judge, as the trier of the issues of fact, had before him the witnesses. He heard them testify; he saw their demeanor on the witness stand. He concluded that appellee had failed to establish his case by a preponderance of the evidence. There was no authority in the circuit court, on appeal, to set aside such finding of facts by the county court, unless it was against the overwhelming weight of the evidence. On the trial of the case in the circuit court, that court sat as a court of appeals. It tried the case alone on the record made in the county court. In such a case, in determining the issues of law and fact involved, the circuit court is controlled by the same considerations as control the supreme court in passing on appeals from the circuit and chancery courts. The finding of facts by the county judge, sitting both as judge and jury, was entitled to the same weight with the circuit court on appeal as the verdict of a jury finding the same facts. On such appeal to the circuit court, the latter court had no larger authority to try issues of fact than has the supreme court on appeals from the circuit and chancery courts.

It follows from what we have said that the circuit court was without authority to reverse the judgment of the county court, unless the finding of facts by the county judge, sitting as court and jury, was against the overwhelming weight of the evidence; and we are of the opinion that that cannot be said in this case.

Reversed, and judgment here for appellant.

*Reversed.*